**Mary Ann DOWELL, Appellant,**

v.

**Ralph E. DOWELL, Appellee.**

Court of Appeals of Kentucky.

Feb. 2, 1973.

J. L. Richardson, III, Richardson & Richardson, Louisville, Allen P. Dodd, III, Louisville, for appellant.

Walter R. King, Louisville, for appellee.

REED, Justice.

This is a divorce action in which a judgment was entered in December 1971. The defendant-husband was granted an absolute divorce from the plaintiff-wife on his counterclaim; he was also granted the custody of two children, both boys, one then nine years old, born as a result of this marriage, and the other then fourteen years old, who is the natural son of the plaintiff-wife, born to her as the result of a previous marriage, but who also had been legally adopted by the defendant-husband. The wife was awarded $10,000 to be paid by the husband who was awarded the home of the parties. The method of payment was left up to the husband to the extent that he could pay the amount in a lump sum or at the rate of $50.00 per month, without interest. The wife's complaint seeking a divorce, custody of the children, an equitable distribution of the property of the parties, and alimony was dismissed. She has appealed.

■ The plaintiff does not argue that she was legally entitled to a divorce or alimony. Her first contention is that the distribution between the marital partners of the "team effort property" effected by the trial judge was unreasonable and inequitable. We agree. She also strenuously contends that she was entitled to the custody of the two children. We are not free from doubt on this issue, particularly concerning the older boy, but in view of the evidence we have concluded that the trial judge's decision granting custody of the children cannot be characterized as an abuse of discretion, hence we cannot substitute our judgment for his.

It is not in the best interest of the children or the adult parties nor will it aid the profession to extensively detail the facts relevant to the cause of the divorce. Suffice it to say that the plaintiff-wife was repeatedly indiscreet with another man. There is no direct evidence of sexual infidelity but there was surely more association with and attraction for this roomer and boarder in the home of the married couple than was reasonably endurable by the husband.

The parties were married for about eleven years. In that time the only significant asset produced by their efforts was the home in which they lived at the time of the divorce. The wife's grandmother gave them the lot on which the home was built. Both parties contributed labor in the construction of the improvements. The parties agree in their briefs on appeal that the net worth of this asset at the time of the trial was approximately $19,300.00. The market value of the lot appears to have been agreed to as approximately $4,650.00, which represents an investment by the wife for purposes of division. It is also conceded that she contributed and thereby invested $6,956.00 from her separate funds in this asset. She worked outside the home only during the last three years of the marriage. She helped her husband in his business of renting and using heavy equipment. In 1970 he had net earnings of

$13,746.86. We are unable to arrive at any conclusion other than that the trial judge erroneously applied some consideration of marital misconduct when he undertook to make a distribution of the marital property. Fault is not an element in effecting the distribution. The award of title to the home to the husband with provision for payment to the wife of $10,000 in monthly installments of $50.00, without interest, is patently unreasonable and inequitable. The trial judge will, therefore, re-evaluate this distribution under the rules spelled out in Colley v. Colley, Ky., 460 S.W.2d 821 (1970).

■ The problem of the custody of the children is particularly complex in this case. The trial judge interviewed the children in chambers. Both children expressed a strong desire to live with their mother. It appears, however, that she lived in a trailer and earned about $1,300.00 a year as a school bus driver. The husband waited seven months after he had filed the counterclaim in which he sought custody of the younger boy, who was the child of this marriage, before he amended his pleading to seek the custody of the fourteen-year-old son of the wife and his adoptive child. The older boy expressed some fear of his adoptive father. The husband, according to his brief, represented to the court that he would keep the children from "associating with this trash as she (the wife) is, and the stuff she is running with." The wife's mother testified that she was thoroughly familiar with all the facts relevant to custody and she strongly urged the trial judge to award custody to the husband and to deny it to her daughter.

To consign innocent children as pawns in an environment of fear, controlled by an adult seeking retribution, vindication, and revenge, is hardly a socially acceptable result. By like token, to abandon innocent children to an atmosphere of licentiousness and neglect when another alternative is present is also unacceptable.

Under accepted principles of appellate review, we are confined to the record be-

**480**

fore us. Upon that record, and particularly in view of the maternal grandmother's testimony, we cannot say that the trial judge's determination of custody constituted an abuse of discretion. Without further detailed comment, we do find that the provisions for visitation by the mother are unreasonably restrictive and should be amended to provide more extensive and definite visitation than merely "reasonable visitation but not overnight and not to interfere with their schooling," as is now provided in the judgment.

The judgment is affirmed insofar as it awards custody. Insofar as it adjudicates the property rights of the parties and the matter of visitation, it is reversed for further proceedings consistent herewith.

PALMORE, C. J., and MILLIKEN, OSBORNE, STEINFELD, and STEPHENSON, JJ., sitting.

All concur.